# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| NICK P., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security,[1] <br><br> Defendant. | Case No. ED CV 19-00604-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Nick P. ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his application for Supplemental Security Income ("SSI").[2] The Commissioner's decision is reversed and this case is remanded for further proceedings consistent with this opinion.

---

[1] Under Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Andrew M. Saul is hereby substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this action.

[2] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

I.  **BACKGROUND**

Plaintiff filed an application for SSI on June 30, 2012, alleging disability beginning December 31, 2001. See Dkt. 16, Administrative Record ("AR") 154-62.[3] After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). See AR 113-15. A hearing was held on January 29, 2014, see AR 53-74, and Plaintiff received an unfavorable decision on April 4, 2014, see AR 33-51. After the Appeals Council denied review, see AR 1-7, Plaintiff filed an action in this Court, Perez v. Colvin, Case No. ED CV 16-00296-DFM. Based on the parties' stipulation, this Court reversed and remanded for further proceedings. See AR 421-33.

On remand, a different ALJ conducted an oral hearing, see AR 499-530, and issued an unfavorable decision, see AR 303-27. The ALJ found that Plaintiff had the severe impairments of obesity, bilateral knee degenerative joint disease, right foot hallux valgus deformity and arthritis, history of polysubstance abuse and dependency, learning disorder, mood disorder, borderline intellectual functioning, and bipolar affective disorder. See AR 309. The ALJ determined that Plaintiff had the medically determinable but not severe impairment of hypertension. See AR 309. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work but with the following limitations:

> never able to climb ladders, ropes, or scaffolds; may occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch and crawl; may have no exposure to unprotected heights and moving mechanical parts; may frequently push and pull with the left lower extremity; is able to understand, remember and carry out

---

[3] All citations to the AR are to the record pagination. All citations to the JS are to the CM/ECF pagination.

> simple one to two step works tasks; may have frequent interaction with co-workers and supervisors but is precluded from teamwork tasks; and may have no contact with the public.

AR 313. Based on the evidence of record and the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform the jobs of garment bagger (DOT 920.687-018), with 10,700 jobs available nationally, and bakery worker, conveyor line (DOT 524.687-022), with 11,400 jobs available nationally. See AR 321. Consequently, the ALJ concluded that Plaintiff was not disabled. See AR 322.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. This action followed. See Dkt. 1.

## II. DISCUSSION

The parties dispute whether (1) the ALJ properly assessed Plaintiff's mental RFC and (2) substantial evidence supported the ALJ's finding that there were a substantial number of jobs Plaintiff could perform in the national economy. See Dkt. 19, Joint Stipulation ("JS") at 5.

### A. **The ALJ Did Not Err When Determining Plaintiff's Mental RFC**

#### 1. **Applicable Law**

A claimant's RFC is the most a claimant can still do despite her limitations. See Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996). An ALJ will assess a claimant's RFC based on all the relevant evidence of record and will consider all of the claimant's medically determinable impairments, whether found to be severe or not. See 20 C.F.R. § 416.945(a)(2). An RFC assessment is ultimately an administrative finding reserved to the Commissioner. See id. § 416.927(d)(2). However, an RFC determination is based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining

physicians. See id. § 416.945. A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 416.927(c). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014).

When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. § 416.927(c).

### 2. Background

Dr. Kent B. Layton, a clinical psychologist, testified as the impartial medical expert ("IME") at the January 17, 2018 hearing. See AR 334-63. Of importance here, Dr. Layton testified that Plaintiff had a marked limitation in his ability to interact with others. See AR 340. Dr. Layton also testified that

Plaintiff had a moderate limitation in interacting with supervisors such that he could have only occasional interaction with supervisors. See AR 343.

Dr. Anuradha Sathya, Plaintiff's treating physician, completed a medical source statement about Plaintiff's mental ability to perform work-related activities on November 4, 2017. See AR 802-04. Dr. Sathya opined that Plaintiff was "[u]nable to work in a social environment or follow orders." AR 803. In an accompanying mental disorders evaluation form, Dr. Sathya indicated that Plaintiff was "[v]ery anxious with [a] homicidal attitude when interact[ing] with people." AR 806. Dr. Sathya also indicated that Plaintiff was "[u]nable to interact or communicate with strangers or any people" and "[u]nable to work with people" or "follow instructions." AR 807.

Other physicians opined that Plaintiff's mental limitations were not as extreme. Two non-examining state agency physicians opined that Plaintiff was capable of one and two step tasks with moderate limitation on public contact. See AR 81-82, 94-95. Dr. Douglas Larson, an examining psychologist, opined that Plaintiff had moderate limitations in mental functioning including his ability to interact with supervisors, co-workers, and the public. See AR 257. Dr. Tanya Scurry, an examining psychiatrist, opined that Plaintiff was not limited in his ability to interact with the public, coworkers, or supervisors and had mild or moderate limitations in other areas of mental functioning. See AR 267.

The ALJ's RFC limited Plaintiff to simple one-to-two step work tasks, frequent interaction with co-workers and supervisors, no teamwork tasks, and no contact with the public. See AR 313. In reaching this RFC, the ALJ gave Dr. Layton's opinion "partial weight." AR 318. The ALJ noted that Dr. Layton had difficulty explaining what he meant by complex routine tasks, did not review additional medical records submitted before his review of the file, and did not review the portion of the record containing the opinions of the

state agency psychological consultants. See id. The ALJ also found that the medical evidence and Plaintiff's activities of daily living supported moderate rather than marked limitation in interacting with others and that Plaintiff could interact frequently rather than occasionally with supervisors and coworkers. See id.

The ALJ also gave Dr. Sathya's opinion "little weight." AR 319. The ALJ explained that Dr. Sathya's opinions were not supported by the objective medical evidence and were inconsistent with evidence from other sources. See id. The ALJ also found that Dr. Sathya primarily summarized Plaintiff's subjective complaints without documenting objective findings. See id. The ALJ noted that Dr. Sathya was a family medicine doctor, not a psychiatrist, and did not appear to have conducted any mental status examinations. See id. Finally, the ALJ noted that there were "little to no" objective findings in Dr. Sathya's treatment records to support his opinion. Id.

### 3. Analysis

Plaintiff argues that the ALJ did not provide specific and legitimate reasons for discounting the opinions offered by Dr. Layton and Dr. Sathya. See JS at 23-28. The Court disagrees.

The ALJ properly discounted the IME's opinion because he did not review the state agency physicians' opinions. See AR 348 (hearing testimony where IME acknowledged he did not review portion of Plaintiff's file). The ALJ also properly relied on Plaintiff's daily activities to reject Dr. Layton's opinion, noting that those activities were "more consistent with moderate limitation in [interacting with others]" and "the ability to have frequent interaction with supervisors and co-workers." AR 319. "A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." Ford v. Saul, 950 F.3d 1141, 1155 (9th Cir. 2020). This reason was supported by substantial evidence; the record

includes evidence that Plaintiff walked, rode a bicycle, went out alone, attended church, prepared meals, and helped with yard work. See AR 214-15, 254, 262.[4]

The ALJ also provided specific and legitimate reasons supported by substantial evidence to discount Dr. Sathya's opinion. The ALJ noted that Dr. Sathya's opinion was based primarily on Plaintiff's subjective complaints, which the ALJ found were inconsistent with other evidence in the record and Plaintiff's activities of daily living.[5] An ALJ can reject a medical opinion that is based on subjective complaints where the ALJ properly determined Plaintiff was not credible. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Furthermore, it was proper for the ALJ to note that Dr. Sathya's treatment records did not reflect any mental status examinations and that Dr. Sathya was not a psychiatrist.

Finally, the ALJ noted that both Dr. Layton's and Dr. Sathya's opinions were contradicted by medical evidence from other sources. Among other things, the record shows that Dr. Layton's and Dr. Sathya's opinions were contradicted by the opinions of Dr. Larson, an examining psychologist, and Dr. Scurry, an examining psychiatrist. Although those are non-treating sources, both made independent clinical findings. As a result, those contradictory opinions can also constitute an additional specific and legitimate reason supported by substantial evidence for discounting Dr. Layton's and Dr. Sathya's opinion. See Magallenes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989).

---

[4] The Court reaches this conclusion mindful of the fact that, as the Ninth Circuit recently reiterated, "substantial evidence" means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ford, 950 F.3d at 1154 (citation omitted).

[5] Plaintiff does not contest the ALJ's determination regarding his subjective symptoms. See JS at 4-5.

Because the ALJ provided specific and legitimate reasons supported by substantial evidence to discount the opinions given by Dr. Layton and Dr. Sathya, remand is not warranted on this claim of error.

**B.     Remand Is Necessary on the ALJ's Step Five Determination**

Plaintiff contends that the ALJ's determination that there was a significant number of jobs that Plaintiff could perform in the national economy lacks substantial evidence. See JS at 5-16.

When making a step five determination, an ALJ may properly rely on a VE's testimony regarding the number of relevant jobs. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). No bright-line rule exists for what constitutes a significant number of jobs in the regional or national economy. See Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). While 1,680 jobs was not a significant number in Beltran, 25,000 jobs in the national economy was a significant number in Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014). The Ninth Circuit has yet to endorse a number below 25,000 with respect to the significant number standard. A subsequently unpublished Ninth Circuit decision interpreting Gutierrez noted that 10,000 jobs was unlikely to qualify as a significant number. See Randazzo v. Berryhill, 725 F. App'x 446, 446 (9th Cir. 2017) (finding ALJ's error not harmless because 10,000 jobs "may not amount to a significant number of jobs in the national economy"); see also Lemauga v. Berryhill, 686 F.App'x. 420, 422 (9th Cir. 2017) ("We note that this court has never found [12,600 jobs] to be significant.").

Here, the ALJ found there were two jobs Plaintiff could perform, garment bagger (DOT 920.687-018) and conveyor line bakery worker (DOT 524.687-022). See AR 321. The ALJ found that there were 10,700 garment bagger jobs nationally and 11,400 bakery worker jobs nationally. See AR 321.

But the ALJ based his 11,400 bakery worker jobs figure on the VE's testimony. And while the VE originally indicated that there were that many

jobs in the national economy, see AR 376, that testimony did not appear to withstand questioning by Plaintiff's counsel. After that questioning the ALJ asked, "is it still your opinion that there are 11,400 bakery worker jobs that fit the criteria?" AR 387. The VE responded, "It's probably less than that, but I can't tell you how much less." Id. This indicates the VE believed there were less than 11,400 bakery worker jobs that Plaintiff could perform in the national economy. The ALJ should have required the VE to provide a new estimate or otherwise clarified how many bakery worker jobs he believed Plaintiff could perform in the national economy.

  This error was not harmless. See De Rivera v. Berryhill, 710 F. App'x 768, 769 (9th Cir. 2015) (reviewing for harmless error where the ALJ properly identified another job the plaintiff could perform). The VE identified only 10,700 garment bagger jobs in the national economy and it is not clear under Ninth Circuit precedent that this constitutes a significant number of jobs. The Court has no basis for determining how many bakery worker jobs the VE would have testified existed. And the Court is unable to conclude that 10,700 garment bagger jobs represents a significant number in the national economy. See id. (remanding after harmless error analysis because it was unclear that 5,000 national jobs was a significant number and so the court could not "confidently conclude" the error was harmless); Randazzo, 725 F. App'x at 446. Accordingly, remand is appropriate for the ALJ to make a step five determination that ascertains a specific number of job available in the national economy that Plaintiff is able to perform.

## III. CONCLUSION

The decision of the Social Security Commissioner is reversed and this case is remanded.

IT IS SO ORDERED.

Date: March 27, 2020

DOUGLAS F. McCORMICK
United States Magistrate Judge